## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

ANGELA HALL and
ERIK HALL,

       Plaintiffs,

v.            CIVIL ACTION NO.   3:22-0277

PUTNAM COUNTY COMMISSION
a Political Subdivision of the State of West Virginia;
DEPUTY SHERIFF HEATHER D. GRIMMETT, an individual; and
DEPUTY SHERIFF B. W. PAULEY, an individual.

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Putnam County Commission's Motion to Dismiss (ECF No. 9) and Defendants Deputy Heather Grimmett and Deputy B.W. Pauley's Motion to Dismiss (ECF No. 11). For the reasons herein, each Motion is **DENIED,** in part, and **GRANTED,** in part.

## I. BACKGROUND

Plaintiffs Angela and Erik Hall are residents of Putnam County, West Virginia. Compl. ¶ 3, ECF No. 1. Defendant Putnam County Commission ("PCC") is a political subdivision of the State of West Virginia, responsible for the county's Sheriff's Department. *Id*. ¶ 4. Defendants Deputy Heather D. Grimmett and Deputy B. W. Pauley ("the Deputies") are members of the Putnam County Sheriff Department. *Id*. ¶¶ 5-6.

On November 3, 2021, Deputy Pauley and other unnamed members of the Sheriff's Department were dispatched to the Hall residence in response to a 911 call from that residence in which dispatchers only "hear[d] a female crying" prior to the line disconnecting. *Id*. ¶ 8, Ex. A, Pauley Statement. Dispatchers then received a second call from a neighboring house, indicating two teenage girls had "ran to their house and advised their parents were fighting." *Id*. at Ex. A. After knocking and receiving no response, Deputy Pauley and others entered and searched the home. *Id*. ¶ 9. Plaintiffs allege that Deputy Pauley and others placed Plaintiffs' two minor children "in a patrol vehicle away from the home at an undisclosed location." *Id*. ¶ 10. Ms. Hall returned home to discover Deputies searching the premises and her children missing. *Id*. ¶¶ 11, 13. Deputy Pauley requested a statement from Ms. Hall, and, upon her refusal, allegedly informed her that "they had her children and those children would only be returned once she had given a statement and cooperated with law enforcement." *Id*. ¶ 13. Ms. Hall claims that as she provided Deputy Pauley with a recorded statement "when he was not happy with what [she] was saying [he would] stop the recording, coach [Ms. Hall], and then begin recording over again" for a period of approximately two hours. *Id*. ¶¶ 14-15, Ex. B. Ms. Hall further avers that when Deputy Pauley filled in a "Dangerous-Lethality Form" concerning her husband, he misrepresented and mis-recorded her answers to the questions on that form. *Id*. ¶¶ 15-16, Ex. B. Ms. Hall's children were returned to her, and Mr. Hall was subsequently charged with two counts of domestic battery and one count of interfering with emergency communication. *Id*. ¶¶ 18-19. In response, Ms. Hall filed a formal complaint with PCC on December 19, 2021. *Id*. ¶ 21, Ex. B.

On January 12, 2022, Deputy Grimmett made a referral to the West Virginia Department of Health and Human Resources Child Protective Services Division ("DHHR") claiming Mr. Hall abused the children residing in Plaintiffs' home. *Id*. ¶¶ 30-31. DHHR investigated and made a

finding of no abuse or neglect on May 23, 2022. *Id.* ¶ 32; Pls.' Resp. to Def. Deputies' Mot. to Dismiss, ECF No. 14 at Ex. C, "DHHR Letter and Findings (redacted)," ECF No. 14-3. Despite this finding, Deputy Grimmett allegedly filed an Abuse and Neglect Petition concerning the Hall children in the Circuit Court of Putnam County, West Virginia. Compl. ¶ 33. Plaintiffs allege that this filing "shocked" the DHHR investigator and his supervisor, who "do not agree with" Deputy Grimmett's actions. *Id.* ¶ 34.

On April 4, 2022, Deputy Grimmett obtained a search warrant from the Magistrate Court of Putnam County to search Plaintiffs' home for firearms. *Id.* ¶ 25. The warrant was executed on April 6, 2022. *Id.* ¶ 26. Plaintiffs allege that during this search Deputy Grimmett "took no care in searching the home and destroyed numerous pieces of property belonging to the Plaintiffs." *Id.* ¶ 28. During this encounter, Deputy Grimmett allegedly required Ms. Hall to undress and redress before and after using the bathroom. *Id.* ¶¶ 59-61.

Mr. Hall was convicted of two misdemeanor counts of domestic battery in a criminal bench trial on May 9, 2022. *Id.* ¶¶ 35, 38; Def. Deputies' Mot. to Dismiss at Ex. 1, ECF No. 11-1. During Mr. Hall's trial, Deputy Pauley testified that all but five minutes of the two hours of Ms. Hall's recorded statement on the night of November 3, 2021 were deleted. Compl. ¶ 98. Mr. Hall's convictions are currently under appeal. *Id.* ¶ 39.

Plaintiffs filed this Complaint on July 6, 2022, claiming (1) violation of their First, Fourth and Fourteenth Amendment rights, bringing suit under 42 U.S.C. § 1983; (2) a *Monell* claim directed against PCC, regarding the same alleged constitutional violations; (3) a supervisory liability claim potentially directed against PCC, also under 42 U.S.C. § 1983; (4) common law abuse of process by Deputy Grimmett via her usage of the Abuse and Neglect Proceedings and the search warrant; (5) intentional infliction of emotional distress ("IIED"); and (6) spoliation of

evidence through Deputy Pauley's erasure of the statements made by Ms. Hall during the November 2021 encounter. Plaintiffs are seeking compensatory and punitive damages, as well as attorney's fees and costs. Additionally, Plaintiffs request equitable relief in the form of education for Defendant Deputies and implementation of discipline against them.

Defendant Deputies have filed a joint Motion to Dismiss. ECF No. 11. PCC has filed a separate Motion to Dismiss. ECF No. 9. All Defendants allege that the Plaintiffs' § 1983 claims, *Monell* claim, and supervisor liability claim are barred by *Heck v. Humphrey*, *Rooker-Feldman* Doctrine, or *Younger* Abstention Doctrine. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 10 at 10-13; Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 12 at 6-10. PCC claims statutory immunity to the abuse of process, IIED, and spoilation claims under the Governmental Tort Claims and Insurance Reform Act. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 6-9. For a variety of reasons, the Deputies argue that none of the Plaintiffs' claims are plausibly alleged. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 10-20.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts alleged in the complaint need not be probable, the statement must contain "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. ANALYSIS

#### A.  42 U.S.C. § 1983 Claims

Plaintiffs have brought suit under 42 U.S.C. § 1983, alleging violations of their First, Fourth, and Fourteenth Amendment rights by Defendant Deputies. Compl. ¶ 44. In connection with these claims, Plaintiffs have brought *Monell* and supervisory liability claims against PCC. *Id*. at ¶¶ 74-84. Defendants have each motioned to dismiss the § 1983 claims. *See* Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 9-16; Def. Deputies' Mem. of Law in Supp. of Mot to Dismiss at 6-16. For the following reasons, these motions are **GRANTED**, in part, and **DENIED**, in part.

##### i.     *First Amendment Retaliation Claim*

Plaintiffs' First Amendment retaliation claim under § 1983 alleges that Ms. Hall's complaint filed against Deputy Pauley in December 2021 led Deputy Grimmett to retaliate against the couple by (1) "making a frivolous referral" to DHHR; (2) "having a meritless search warrant issued on

April 4, 2022;" and (3) "causing a Petition for Abuse and Neglect Proceedings to be filed with the Circuit Court of Putnam County" alleging child neglect or abuse. Compl. ¶ 49. Defendant Deputies argue for dismissal of Plaintiffs' First Amendment claims on the grounds that (1) Defendants had a nondiscretionary duty to report child abuse and neglect, (2) the warrant was supported by probable cause, and (3) Defendants do not allege sufficient actionable conduct against Deputy Grimmett concerning the petition.[1] Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 11-12.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for their protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To plausibly allege a First Amendment retaliation claim, the Fourth Circuit has held that plaintiffs must demonstrate that (1) their speech was protected, (2) the defendant's alleged retaliatory action adversely affected the plaintiffs' constitutionally protected speech, and (3) a causal relationship exists between their speech and the defendant's retaliatory action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). The third element employs a "but for" standard. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721-28 (2019). Taking the facts alleged in the Complaint as true—that Ms. Hall filed a complaint with PCC concerning Deputy Pauley's behavior, and that PCC or its employees responded to that complaint by initiating a child neglect or abuse investigation, child neglect or abuse proceedings, and a search warrant against the couple—Ms. Hall has plausibly alleged on the face of her Complaint that these three elements have been met. *See* Compl. ¶¶ 46-49. First, a complaint filed with a governmental subdivision

---

[1] While PCC does not address Plaintiffs' First Amendment claim directly, all Defendants broadly attack Plaintiffs' constitutional claims under *Heck v. Humphrey*, *Rooker-Feldman* Doctrine, and *Younger* Abstention Doctrine; these claims will be addressed in more detail below. *See* Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 6-10; Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 9-15.

complaining about police action is archetypical protected speech. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *Tobey v. Jones*, 706 F.3d 379, 391 (4th Cir. 2013) ("A bedrock First Amendment principle is that citizens have a right to voice dissent from government policies.") (citing *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Second, instituting child neglect proceedings and search warrants in retaliation for filing such a complaint could plausibly engender a substantial chilling effect, deterring a person of ordinary firmness from complaining about police conduct. *See Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) ("A chill results if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights.") (internal citation omitted). Third, Ms. Hall is plausibly alleging the requisite "but for" standard: the Plaintiffs claim that the proceedings and warrants were only initiated in response to Ms. Hall's complaint. Compl. ¶ 49.

In their Motion to Dismiss, Defendant Deputies argue that the referral to DHHR could not plausibly be retaliatory in nature, given that the Deputies are mandatory abuse and neglect reporters under West Virginia Code § 49-2-803. Def. Deputies' Mem. of Law in Supp. of Mot. at 11. Courts do not accept claims which are not plausible, and plausibility does not exist where an "obvious alternative explanation" is available. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). Furthermore, the Fourth Circuit has recently found a lack of plausibly alleged retaliation in a First Amendment case involving an analogous Virginia mandatory reporting of child abuse and neglect statute. *Davison v. Rose*, 19 F.4th 626, 637-39 (4th Cir. 2021) (relying on *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311 (4th Cir. 2009)). However, in *Davison*, the mandatory reporter was responding to numerous complaints brought to him against the parent; here, the Complaint alleges that Deputy Grimmett filed her report based solely on the November

2021 encounter with Ms. Hall and the resulting charges against Mr. Hall.[2] *Davison*, 19 F.4th at 631, 638-39; Compl. ¶ 49(a). Moreover, while the Deputies are mandatory reporters, that mandate is for the first twenty-four hours after "suspecting this abuse or neglect." W. Va. Code § 49-2-803(a). Here, Defendants waited two months to refer the case to DHHR. Compl. ¶ 49a. The Court is commanded to employ its common sense and judicial experience in drawing influences to determine plausibility, *Iqbal*, 556 U.S. at 678; here, the delay between the mandatory reporting guideline and the filing of the report with DHHR plausibly alleges grounds from which the Court can infer impropriety. Although Ms. Hall might not prevail on this retaliation claim at trial, she has plausibly alleged such retaliation sufficient to survive dismissal.

Similarly, the Deputies further argue that, as probable cause existed to issue the search warrant due to Mr. Hall's arrest, the search warrant cannot be a retaliatory action as a matter of law. Def. Deputies' Mem. of Law in Supp. of Mot. at 12. The Supreme Court has held that where probable cause is present, a retaliatory arrest claim will generally fail. *Nieves*, 139 S. Ct. at 1721-28; *see also Hartman*, 547 U.S. at 265 (finding that plaintiffs must plead lack of probable cause to prevail in a retaliatory prosecution claim). Some circuits have extended these holdings to claims of government retaliation through civil actions, and at least one district court has applied *Nieves* to an alleged retaliatory search warrant. *See, e.g.*, *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1303 (11th Cir. 2019) (concerning an alleged retaliatory civil RICO action supported by probable cause), *cert. denied* 141 S.Ct. 660 (2020); *Johnson v. City of Atwater*, 2019 WL 2493271 at *9

---

[2] And as in *Davison*, the West Virginia mandatory reporting statute grants immunity to "any person, official, or institution" reporting "in good faith." 19 F.4th at 638; W. Va. Code § 49-2-810. The issue of immunity was not raised by Defendant Deputies. *See* Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss. Regardless, the Court finds that Ms. Hall has alleged sufficient bad faith to overcome the grant of immunity in § 49-2-810, alleging that the report was filed maliciously and providing factual allegations supporting that inference. *See* Compl. ¶ 49a.

(E.D. Ca. June 14, 2019) (applying *Nieves* to a claim of a retaliatory search warrant in conjunction with an alleged retaliatory arrest); *Stewart v. Justice*, 518 F. Supp. 3d 911, 920 (S.D.W. Va. 2021) (discussing First Amendment retaliation cases post-*Nieves*); *see also Fredin v. Clysdale*, 2018 WL 7020186, at *7 (D. Minn. Dec. 20, 2018) (analogizing from *Hartman* to find that retaliation claim failed as a matter of law due to existence of probable cause for search warrant), *report and recommendation adopted*, 2019 WL 802048 (D. Minn. Feb. 21, 2019). *But see Udd v. City of Phoenix*, 2020 WL 1536326 at *13 (D. Ariz. Mar. 31, 2020) (holding both *Nieves* and *Hartman* inapplicable where no arrest occurred but criminal referrals were issued). Neither the Supreme Court nor the Fourth Circuit has held on the issue of whether probable cause defeats a claim of a retaliatory search warrant. However, the Court need not decide the issue at this time, as the Deputies are disputing the factual basis of probable cause in their Motion to Dismiss—they imply that the pending domestic violence charges of Mr. Hall inherently constituted probable cause to search the Hall residence, and therefore, Plaintiffs' allegation of retaliation fails due to the existence of probable cause supporting the warrant. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 12.

Defendants misunderstand the law; it is legally possible that the search warrant issued for the Hall residence could lack probable cause, regardless of Mr. Hall's arrest on domestic violence charges. "Probable cause to believe that a person is engaged in criminal activity is not carte blanche to search all their personal effects. There must also be some nexus between the suspected crime and the place to be searched—a substantial likelihood that evidence of a crime will be found in a particular place." *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022) (internal quotation marks omitted). Here, Plaintiffs have sufficiently alleged as a factual matter that the search warrant was "meritless" and "without probable cause." Compl. ¶ 49, 89. Defendants may be able to

properly demonstrate probable cause and the necessity of extending the Supreme Court's holding in *Nieves* to convince the Court at a later stage in these proceedings, but in considering a Motion to Dismiss, the Court will accept Plaintiffs' factual allegation of absence of probable cause in issuance of the warrant as true. *See Tobey v. Jones*, 706 F.3d 379, 392 (4th Cir. 2013) (holding that pleading absence of probable cause supported claim of retaliatory arrest at motion to dismiss stage).

Finally, the Deputies argue that the absence of sufficiently alleged facts concerning how Deputy Grimmett caused abuse and neglect proceedings to be filed is fatal to Plaintiffs' claims. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 13. Defendants are correct that the Complaint does not allege the facts surrounding this incident with great specificity. *Id*.; *see* Compl. ¶ 49(c). However, in considering a motion to dismiss, the Court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor," only dismissing the complaint if "it appears certain that the plaintiff cannot prove any set of facts in support of [their] claim entitling [them] to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Plaintiffs have alleged that Deputy Grimmett caused a Petition for Abuse and Neglect Proceedings to be filed with the Circuit Court of Putnam County. Compl. ¶ 49(c). Defendants have not disputed that Deputy Grimmett's filing of such a petition could meet the elements of First Amendment retaliation; they have only argued that Plaintiffs have failed to sufficiently detail their allegations concerning how Deputy Grimmett filed the petition. *See* Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 13. This is insufficient to prevail on their Motion to Dismiss. The Court must accept Plaintiffs' plausible allegation against Deputy Grimmett as true under *Iqbal*, and therefore finds that it is possible for Ms. Hall to prove a set of facts that would entitle her to relief on this claim, even if

she has yet to do so.

There is no evidence, however, that Mr. Hall's speech was implicated in this matter. He did not sign his wife's complaint or otherwise engage in protected speech subject to retaliation. *See* Compl. at Ex. B. Therefore, the Court **DENIES** the motions to dismiss the First Amendment claim with regards to Ms. Hall and **GRANTS** the motions to dismiss the claim with regards to Mr. Hall.

### ii.    *Fourth Amendment Claims*

Defendant Deputies argue that the Complaint does not plausibly support Plaintiffs' claims of unreasonable search and seizure under the Fourth Amendment. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 13. Defendants assert that in November 2021, Deputy Pauley merely "requested a statement from Angela Hall" and spoke to her concerning her husband's behavior. *Id*. at 14. Regarding the April 2022 incident, Defendants claim that Plaintiffs' allegation that the search warrant was "meritless" is an unsupported legal conclusion not entitled to an assumption of truth, and that the Complaint admits the purpose of the warrant was related to Mr. Hall's prosecution. *Id*. at 15-16.

Under the Fourth Amendment, every search or seizure by a government agent must be reasonable, and a search or seizure is generally unreasonable unless based on probable cause and executed pursuant to a warrant. U.S. Const. amend. IV; *see Missouri v. McNeely*, 569 U.S. 141, 148 (2013). A person is seized under the Fourth Amendment if "by means of physical force or a show of authority, his freedom of movement is constrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). A show of authority has occurred if "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id*. at 554; *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015). The Court has noted several factors that tend to indicate seizure: (1) threatening presence of officers, (2) display

of weapons, (3) physical touching, or (4) language or tone implying compliance will be compelled. *See Mendenhall*, 446 U.S. at 554-55. When a plaintiff alleges they were seized in response to a show of authority, that authority must have actually succeeded in restraining their movement. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (the Fourth Amendment "does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee."); *United States v. Sheetz*, 293 F.3d 175, 183 (4th Cir. 2002) (citing *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994)). Additionally, the authority restraining freedom of movement must have been intentionally implied by the officer. *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989); *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th Cir. 1998). Absent a formal arrest, the finder of fact must determine whether a suspect's freedom of movement was sufficiently curtailed by considering objectively "how a reasonable man in the suspect's position would have understood his situation." [3] *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *see also Florida v. Bostick*, 501 U.S. 429, 437-38 (1991).

Applying this standard, the Court finds that Ms. Hall has plausibly alleged that she was unreasonably seized in violation of the Fourth Amendment in November 2021. Taking the facts alleged as accurate, Ms. Hall was held for approximately two hours under threat of deprivation of her children; no reasonable person would feel they were free to leave if Deputies withheld their children until they made a statement implicating their husband. *See* Compl. at Ex. B; *Mendenhall*,

---

[3] Defendants imply that one cannot be seized if they are not arrested. *See* Def. Deputies' Reply to Pls.' Resp. to Def. Deputies' Mot. to Dismiss at 8-9. This is incorrect. *Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."); *Figg v. Schroeder*, 312 F.2d 625, 636 (4th Cir. 2002) ("Though neither was subject to formal arrest, both were nonetheless 'seized.'").

446 U.S. at 554. While Ms. Hall does not allege that the officers displayed weapons, the show of authority involved in both searching her house prior to her arrival and withholding her children is sufficient to allege seizure. *See* Compl. ¶¶ 9-13. Additionally, while unaddressed in the body of the Complaint, the attached Exhibit of Ms. Hall's formal complaint to PCC indicates that male Deputies "put their hands on" Ms. Hall to check her body for injuries "without a female officer present." Compl. at Ex. B. Ms. Hall has plausibly alleged facts indicating that Deputy Pauley intended for this show of authority to restrain her: the Complaint asserts that the purpose of these actions showing authority was to obtain a statement against her husband which she was otherwise loathe to give. *Id*. This show of authority succeeded in curtailing Ms. Hall's movement; the encounter with Detective Pauley was not terminated until he indicated that he was satisfied with her statement and returned her children to her approximately two hours later. *Id*. Finally, no one has alleged that Ms. Hall was suspected of a crime—there has been no articulated reasonable suspicion to stop, seize, or question her—and therefore, Ms. Hall has plausibly alleged that this seizure was unreasonable and in violation of the Fourth Amendment.

The issue of whether Ms. Hall has plausibly alleged she was searched and seized in violation of the Fourth Amendment during the execution of the alleged invalid search warrant in April 2022 is a closer call. Law enforcement is permitted to detain members of a household incident to the execution of a search warrant. *Bailey v. United States*, 568 U.S. 186, 193-95 (2013) ("When law enforcement Deputies execute a search warrant, safety considerations require that they secure the premises, which may include detaining current occupants.") (internal citations and quotations omitted); *Yanez-Marquez v. Lynch*, 789 F.3d 434, 471 (4th Cir. 2015) ("[T]he Supreme Court has underscored that officers may detain the occupants of the premises while a search is conducted.") (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). Furthermore, even if a warrant is

defective, so long as it was not "so obviously defective that no reasonable officer could have believed it to be valid" officers are entitled to qualified immunity from suits related to the execution of that warrant. *Messerschmidt v. Millender*, 565 U.S. 535, 555-56 (2012); *see also Groh v. Ramirez*, 540 U.S. 551 (2004) (holding that execution of a facially invalid warrant did not entitle officers to qualified immunity); *Smith v. Munday*, 848 F.3d 248, 256 (4th Cir. 2017).

However, Plaintiffs have alleged that the search warrant was improperly issued, and therefore, Ms. Hall was unreasonably seized and the Hall residence unreasonably searched during its execution. Compl. ¶¶ 49b, 50, 56-63. As discussed above, Ms. Hall has alleged as a factual matter that this warrant was improperly issued in retaliation for her complaint to PCC. This is not a mere conclusion of law unentitled to a presumption of accuracy—Ms. Hall is alleging a specific set of factual circumstances which led to the issuance of a warrant unsupported by probable cause, rather than merely concluding the warrant's impropriety. *See id*. Defendants have not demonstrated that there is no set of facts Ms. Hall could prove which would entitle her to prevail on this claim. If Ms. Hall demonstrates the facial invalidity of the search warrant, the search and seizure in April 2022 would be a cognizable violation of her Fourth Amendment rights.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Ms. Hall's Fourth Amendment claims, and Mr. Hall's unreasonable search claims related to the April 2022 search of his home. As there is no evidence alleged that Mr. Hall was seized in either encounter, the Court **GRANTS** Defendants' Motion with regards to Mr. Hall's Fourth Amendment seizure claims, to whatever extent they are ambiguously asserted in the Complaint.

### iii.    *Potential Fourteenth Amendment Claims*

The Complaint potentially alleges an excessive force claim when ambiguously referencing Fourteenth Amendment violations.[4] Compl. ¶ 66. Defendant Deputies have motioned to dismiss this claim. Deputies' Mot. at 14-15. Oddly, Plaintiffs do not respond to this analysis, although Defendant Deputies address ambiguities in the Response concerning excessive force in their Reply. *See* Pls.' Resp to Def. Deputies' Mot. and Mem. of Law in Supp. of Mot. to Dismiss; Def. Deputies' Reply to Pls.' Resp. to Def. Deputies' Mot. to Dismiss, ECF No. 17 at 9. This potential excessive force claim is, therefore, confined to a single sentence in the Complaint: "Plaintiffs' rights under the Fourteenth Amendment also prohibit the Defendants from exercising excessive force in the performance of their duties." Compl. ¶ 66. It is unclear to the Court if Plaintiffs are, in fact, bringing an excessive force claim; Paragraph 66 of the Complaint states that Defendants *may not* use excessive force, but does not clearly allege that Defendants *violated* this prohibition. Regardless, the Complaint does not give the elements of the offense, let alone plausibly allege factual content to support those elements. *See Iqbal*, 556 U.S. at. 678. The Court therefore finds that, to whatever extent Plaintiffs have alleged an excessive force claim, Defendants' Motion to Dismiss is **GRANTED**.

---

[4] The Court reminds Plaintiffs that excessive force claims against a state are brought under the Fourth Amendment in conjunction with the Fourteenth (via incorporation doctrine). *See Graham v. Connor*, 490 U.S. 386, 394 (1989). More broadly, when this section of the Opinion discusses "Potential Fourteenth Amendment Claims," it adopts without endorsing the language used by Plaintiffs in their Complaint. *See* Compl. ¶ 66. The Court recognizes that Plaintiffs' claims under the First and Fourth Amendment are also brought under the Fourteenth, via incorporation, regardless of how they have been framed in the Complaint.

iv.     *Defenses Raised under* Heck v. Humphrey*,* Rooker-Feldman*, and* Younger

Both PCC and Defendant Deputies have raised *Heck v. Humphrey*, *Rooker-Feldman* Doctrine, and *Younger* Abstention in their Motions to Dismiss. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 10-13; Defs. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 6-10. In doing so, each Motion invokes the prosecution of Mr. Hall as the basis for dismissing the § 1983 claims of both Plaintiffs. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 9; Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 6. Most of Mr. Hall's claims under § 1983 have been dismissed by the Court above, with the exception of his Fourth Amendment unreasonable search claim concerning the April 2022 incident. Therefore, this opinion only addresses the applicability of the invoked doctrines to the claims of Ms. Hall and to that incident involving Mr. Hall's residence. As discussed below, the Court finds none of the doctrines bar the claims of either Plaintiff.

First, Defendants assert that Plaintiffs' constitutional claims are *Heck*-barred, arguing that a judgment in their favor would necessarily imply the invalidity of Mr. Hall's underlying convictions. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 10; Defs. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 6; *see Heck v. Humphrey*, 512 U.S. 477, 488 (1994). Under *Heck v. Humphrey*, § 1983 claims are not cognizable where those claims are challenging the legality of a conviction, and where a favorable adjudication would result in a prisoner's release. 512 U.S. at 488. Instead, *Heck* holds that the correct remedy to be sought is federal habeas corpus. *Id.*; *see Wilson v. Johnson*, 535 F.3d 262, 267-68 (4th Cir. 2008) (holding *Heck* inapplicable when a plaintiff is not in custody and could not seek redress via habeas). *Heck* is entirely irrelevant to Ms. Hall's claims. *See Bishop v. County of Macron*, 484 Fed. App'x 753, 756 (4th Cir. 2012) (holding *Heck* did not apply to a mother's claims where her son was in custody but she was not).

Ms. Hall has not been convicted of any crime, is not in custody, and would not be able to remedy her injuries via habeas corpus. Additionally, the only § 1983 claim of Mr. Hall's which this Court has found cognizable—the April 2022 allegedly unreasonable search of his home—does not implicate the validity of his conviction for domestic violence stemming from the November 2021 incident. Nor would a favorable adjudication concerning the April 2022 search result in Mr. Hall's release from custody.

Second, Defendants argue that the Halls' constitutional claims are barred by *Rooker-Feldman* Doctrine, which prohibits lower federal courts from reviewing or rejecting state court judgments. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 11-12; Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 8-9. *Rooker-Feldman* Doctrine provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005); *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 339-40 (4th Cir. 2022). This argument is inapplicable to Ms. Hall's claims, as the doctrine is expressly "confined to cases … brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. Ms. Hall is not alleging any injuries stemming from a state-court judgment; *Rooker-Feldman* does not apply to a federal suit brought by a plaintiff who was not a party to the state court proceeding, even if privity exists. *Lance v. Dennis*, 546 U.S. 459, 466 (2006). As to Mr. Hall's claims regarding the April 2022 search—as discussed above with regards to *Heck*—a favorable adjudication by this Court concerning that search would not implicate his state court conviction, let alone review or reject it.

Third, Defendants argue that the court should abstain from deciding the constitutional claims due to *Younger* Abstention Doctrine, as Mr. Hall is currently appealing his convictions in state court. Under *Younger*, a federal court must abstain when an action raising constitutional claims will interfere with (1) a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the plaintiff has an adequate opportunity to raise the constitutional claims in the state proceeding. *See Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432 (1982). The Court does not agree that allowing Ms. Hall to pursue her claims will interfere with her husband's appeal. Nor would Ms. Hall have the opportunity to raise her constitutional claims in that proceeding. Again, Mr. Hall's appeal of his state court conviction does not touch upon the April 2022 search; Mr. Hall was convicted based on the events of the November 2021 encounter alone. Therefore, *Younger* Abstention is inapplicable.[5]

v.     Monell *Claim*

PCC argues that Plaintiffs fail to plausibly allege their *Monell* claim, as the Complaint does not cite to an official policy, final decision, act or omission, or practice which caused the Plaintiffs' alleged constitutional deprivations. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 13. In Response, Plaintiffs cite to this Court's recent holding in *Dillion v. Hall* as analogous, in which Plaintiffs were found to have alleged facially plausible facts to support a *Monell* claim. Pls. Resp. to Def. PCC's Mot. and Mem. of Law in Supp of Mot. to Dismiss, ECF No. 13 at 19 (citing 2021 WL 5915031 (S.D.W. Va. Dec. 10, 2021)).

---

[5] Furthermore, the Court notes that while the Supreme Court has not decided whether *Younger* applies to actions for damages, the Fourth Circuit has held that *Younger* does not require dismissal of § 1983 damage actions. *See Deakins v. Monaghan*, 484 U.S. 193 (1988); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 206 (1996); *Nivens v. Gilchrist*, 444 F.3d 237, 248 (4th Cir. 2006); *Suggs v. Brannon*, 804 F.2d 274, 279-280 (4th Cir. 1986). The present action is for damages, and therefore does not require dismissal under *Younger*.

Plaintiffs may hold a political subdivision liable for constitutional violations under § 1983. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). While a political subdivision is amenable to suit under § 1983, it is not subject to vicarious liability for the actions of its employees. *Id.* at 694; *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, a political subdivision is only liable when plaintiffs can demonstrate "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit has identified four ways in which a policy or custom for which a municipality may be held liable may arise:

> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or
> (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

And yet, "although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier. . . . The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Owens v. Baltimore Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). While Defendants argue Plaintiffs' claim fails for not identifying a specific policy, *see* Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 13-15, alleging a pattern of constitutional violations by Deputies is sufficient under *Monell*. *See, e.g.*, *Dillion*, 2021 WL 5915031.

Plaintiffs' *Monell* claim primarily consists of a recitation of legal conclusions. Compl. ¶¶ 75-80; *see Iqbal*, 556 U.S. at 678 (holding that mere recitations of legal conclusions in a complaint are insufficient). However, they allege that "Defendants have also committed other similar civil

rights violations against other victims in Putnam County, West Virginia." *Id*. at ¶ 77. Additionally, the two incidents of November and April are alleged to be a pattern of unreasonable searches and seizures. *Id*. at ¶ 64. Finally, when more broadly outlining the alleged facts, the Complaint states that the case "involves a pattern of violation of due process and civil liberties rights collectively by the Defendants over a period of eight months." *Id*. at ¶ 7. This is sufficient to survive a motion to dismiss under *Monell*, pursuant to *Owens*. *See* 767 F.3d at 403 (allowing a *Monell* claim to survive a motion to dismiss where the plaintiff broadly alleged "reported and unreported" cases against a police department without identifying said cases or a specific policy). While not particularly detailed (as in *Owens*), Plaintiffs' *Monell* claim has sufficiently alleged facts concerning the November search, April search, and "other similar civil rights violations against other victims." Comp. at ¶ 7, 64, 77; *see id*.; *Dillion*, 2021 WL 5915031, at *3 (finding two alleged similar incidents plus a general allegation of a pattern sufficient to plausibly allege a *Monell* claim). If Plaintiffs can demonstrate that the duration and frequency of the alleged "similar civil rights violations" was persistent and widespread, then PCC's failure to address that pattern could constitute a "custom or usage with the force of law." *See Lytle*, 326 F.3d at 471.

Accordingly, PCC's Motion to Dismiss is **DENIED** as to the Halls' *Monell* claim. The Court notes that this claim is more expansive for Ms. Hall than for Mr. Hall, as his § 1983 claims have been dismissed for all alleged constitutional violations except for the April 2022 search of his home.

### vi.  *Supervisory Liability*

In its Motion to Dismiss, PCC argues that Plaintiffs fail to plausibly allege their supervisory liability claim, as Plaintiffs do not include factual information concerning the names of Defendant Deputies' supervisors in their Complaint. Def. PCC's Mot. to Dismiss at 15-16. In response,

Plaintiffs cite to this Court's recent holding in *Dillion v. Hall* as analogous. Pls.' Resp. to Def. PCC's Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 20; *see Dillion v. Hall, et al.*, 2021 WL 5761725 (S.D.W. Va. Dec. 3, 2021). This Memorandum Opinion first considers whether Plaintiffs have plausibly plead supervisory liability in general, and then whether PCC is an appropriate defendant for that plea.

The Fourth Circuit has established three elements for supervisory liability claims brought under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). *Shaw* held that the first element requires the plaintiff demonstrate "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id*. Demonstrating that conduct "poses a pervasive and unreasonable risk of constitutional injury" requires evidence that the conduct is "widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id*. Second, mere knowledge of a subordinate's unconstitutional conduct is insufficient; liability may only be imposed on a supervisor where they have failed in their "supervisory responsibilities." *Iqbal*, 556 U.S. at 676. Finally, the third element is satisfied "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799.

Plaintiffs plausibly allege that supervisors at PCC could have had actual knowledge of the conduct of Deputy Pauley in November 2021 via Ms. Hall's December 2021 complaint. Compl. ¶¶ 21, 81-84, Ex. B. The complaint filed with PCC alleged conduct which constituted a constitutional injury to Ms. Hall—namely, seizure in violation of the Fourth Amendment—and should have put PCC on notice that further constitutional injury could occur. *See id*. at Ex. B. Plaintiffs have further plausibly alleged that the supervisory response was inadequate, as demonstrated by the alleged retaliatory events by subordinate Deputies which occurred on several different occasions. *Id*. at ¶ 49. There is a sufficient causal link asserted in the allegation that the lack of response to the complaint led to further abuse in the form of retaliation. *See id*. ¶¶ 82-84. In summation: Ms. Hall alleges that she provided documentation of the abuse meted out to her to PCC, which contained within it Deputy Pauley's supervisors, who failed to respond to actual knowledge of that abuse with supervisory authority, which led to officer retaliation and further violation of her constitutional rights. While Plaintiffs will need to further support the facts asserted in the Complaint, as of now they would be sufficient to allege supervisor liability against the specific supervisor(s) of Defendant Deputies for the limited purposes of plausibility pleading.

Nevertheless, the fact that Plaintiffs have sufficiently plead the elements of supervisory liability under § 1983 and *Shaw* does not signify that PCC is an appropriate defendant for those claims. Political subdivisions and municipalities such as PCC are appropriately held liable under § 1983 via *Monell*. 436 U.S. 658. Municipal liability under § 1983 cannot, however, be based on a theory of *respondeat superior*. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "It is only when the 'execution of the government's policy or custom . . . . inflicts the injury' that the municipality may be held liable under § 1983." *Id*. (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). The injuries alleged by Plaintiffs caused by

supervisory inadequacy are not such a "policy or custom," and holding PCC liable for them would be an impermissible application of *respondeat superior* under § 1983.

In their Response, Plaintiffs argue that their count of supervisory liability is plead identically to that in *Dillion v. Hall*, which was found acceptable by this Court. Pls.' Resp. to Def. PCC's Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 20; *see Dillion*, 2021 WL 5761725; *Dillion v. Hall, et al.*, 3:21-cv-00435, Complaint, ECF. No. 1. First, the Motion to Dismiss in *Dillion* from Defendant PCC dealt only with the *Monell* claim brought by Plaintiffs in that case, and the Court only addressed arguments related to *Monell* in its Memorandum Opinion—not supervisory liability. *See Dillion*, 2021 WL 5761725. This was because the Complaint in *Dillion* was *not* plead identically to the Complaint in the instant case; in *Dillion*, Plaintiffs brought their supervisory liability claim against a John Doe defendant supervisor, not against PCC directly. *Dillion v. Hall, et al.*, 3:21-cv-00435, Complaint, ECF. No. 1. Second, the Complaint in the instant case does not clearly delineate which Defendant it is brought against, if any. *See* Compl. ¶¶ 81-84. The Court cannot find that the Count was plead against PCC; it refers to the "supervisors of the Defendant Deputies" and uses the pronouns "his/her" in discussing their actions. *Id*. ¶ 82. While PCC was within its rights to ask this Court to dismiss this ambiguously brought count against it, the Court cannot find that Count III was originally plead against PCC.

Were Plaintiffs here to have brought their supervisory liability claim against a John Doe supervisor at PCC, it would have been appropriately brought. As the Complaint now stands, "Count III – Supervisor [sic] Liability" is not brought against any named Defendant. Accordingly, PCC's Motion to Dismiss Plaintiffs' supervisory liability claim is **GRANTED.**

### B.   State law claims

*i.       Statutory immunity under the Governmental Tort Claims and Insurance Reform Act*

PCC has argued that it has statutory immunity as a political subdivision for all state law intentional torts. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 7-8. In response, Plaintiffs do not dispute PCC's characterization of West Virginia law, but argue that the actionable conduct alleged is a result of negligent acts. Pls.' Resp. to Def. PCC's Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 6-8. For the following reasons, the Court agrees with PCC.

The Governmental Tort Claims and Insurance Reform Act ("the Act") grants immunity to political subdivisions from all torts under state law committed by employees, subject to five exceptions. W. Va. Code § 29-12A-4(b)(1), (c). Subsection (b)(1) states that "[e]xcept as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id*. at (b)(1). All the exceptions under subsection (c) concern negligence torts committed by employees. *Id*. at (c); *see also Zirkle v. Elkins Rd. Pub. Serv. Dist.*, 655 S.E.2d 155, 160 (2007) (holding that the Act grants political subdivisions immunity for all intentional torts); *Fields v. King*, 576 F. Supp. 3d 392, 401 (S.D.W. Va. 2021) (holding county commission could not be held liable for intentional torts committed by officers).

The Complaint alleges several intentional torts under West Virginia state law—abuse of process, IIED, and spoilation of evidence. Compl. ¶¶ 85-101. Plaintiffs' Response attempts to recast these torts as negligent in nature. Pls.' Resp. to Def. PCC's Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 6-8. However, each tort alleged contains intentionality as an element. *See Preiser v. McQueen*, 352 S.E.2d 22, 28 (W. Va. 1985) (holding that "there must be proof of a

willful and *intentional* abuse or misuse of the process" to succeed on an abuse of process claim) (emphasis added); *Zsigray v. Langman*, 842 S.E.2d 716, 727 (W. Va. 2020) (providing the elements for IIED, including "that the defendant acted with the intent to inflict emotional distress."); *Hannah v. Heeter*, 584 S.E.2d 560, 572 (W. Va. 2003) (providing the elements for spoilation of evidence, including "willful destruction of evidence"). Consequently, any negligence alleged or involved in the commission of these torts is irrelevant to the Court's analysis.

While the intentional acts underlying the torts are alleged to have been committed by Defendant Deputies, Plaintiffs have included PCC as a party to those counts. *See* Compl. ¶¶ 86, 93; Pls.' Resp. to Def. PCC's Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 6-8. There is no debate that PCC is a political subdivision for the purposes of the Act. *See* § 29-12A-3(c) (defining "political subdivision" to include "any county commission"). Accordingly, as a political subdivision, PCC is immune from suit under the intentional state torts of abuse of process, IIED, and spoilation of evidence. The Court **GRANTS** the Motion to Dismiss PCC as a Defendant on these counts.

### ii.    *Abuse of Process*

Plaintiffs' Complaint alleges that Deputy Grimmett abused process by (1) obtaining a "frivolous search warrant for an ulterior purpose" and (2) instating process with the Putnam County Circuit Court by filing a "frivolous" Abuse and Neglect Proceeding against the Plaintiffs, for the purposes of intimidation and retaliation. Compl. ¶¶ 86-87. Defendants assert that Plaintiffs merely allege improper "institution" of process, rather than "abuse" of process, and therefore have failed to plausibly allege a state law claim for abuse of process against Deputy Grimmett. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 16-17. In Response, Plaintiffs argue that

Deputy Grimmett's continued usage of child abuse and neglect proceedings for improper purposes is sufficient to meet the elements of abuse of process. Pls.' Resp. to Def. Deputies' Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 11-12.

In *Williamson v. Harden*, the Supreme Court of Appeals of West Virginia explained that, "[g]enerally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." 585 S.E.2d 369, 372 (W. Va. 2003) (quoting *Preiser*, 352 S.E.2d at 28). The *Preiser* Court quoted W. Prosser's *Handbook of the Law of Torts* § 121 (1971):

> "The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as the threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." 352 S.E.2d at 28 n.8.

This distinction—abuse of the process after issuance, rather than abuse in causing it to be issued—is relied upon by the Defendants. *See* Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 16-17. However, the Supreme Court of Appeals of West Virginia has primarily emphasized the distinction between malicious issuance and malicious use to indicate that plaintiffs need not prove malicious issuance to prevail on an abuse of process claim. *See Presier*, 117 W. Va. 273. The Supreme Court of Appeals of West Virginia does not appear to draw this distinction in the way Defendants imply—to show that malicious issuance is a bar to an abuse of process claim which also alleges malicious use. *See id*.

The Court finds that Plaintiffs have properly alleged that Deputy Grimmett maliciously abused

process. Compl. ¶ 86-87. Per *Preiser*, to survive a Motion to Dismiss, the Complaint must allege (1) an ulterior purpose, and (2) "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process" which is external and collateral to the proper proceeding. 352 S.E.2d at 28 n.8. Here, the Complaint alleges that the ulterior purpose of Deputy Grimmett's alleged malicious usage of process was retaliation for Ms. Hall's complaint to PCC concerning the actions of Deputy Pauley. Compl. ¶¶ 88-89. Plaintiffs additionally have properly alleged an external and collateral goal which Deputy Grimmett "to intimidate and harass the Plaintiffs and potentially deprive them of their children." *Id*. The Complaint implies that this intimidation was enacted with an intention of chilling Ms. Hall's speech, coercing her into either retracting her complaint with PCC or reconsidering filing any future complaints against Deputy Grimmett's colleagues. *See id*. at 49, 88. Such intimidation constitutes "coercion to obtain a collateral advantage" to the proceedings instituted by Deputy Grimmett against the couple. *See Preiser*, 352 S.E.2d at 28 n.8.

Therefore, Defendants' Motion to Dismiss the abuse of process claim is **DENIED**.

### iii.    *Intentional Infliction of Emotional Distress ("IIED")*

Defendant Deputies have argued that as Plaintiffs' claim only pertains to law enforcement investigation, it is insufficiently outrageous to support a finding of IIED. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 17-19. In Response, Plaintiffs emphasize that at this stage in the proceedings, they need not prove every element of the offense. Pls.' Resp. to Def. Deputies' Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 12. Additionally, Plaintiffs assert that the events alleged in the Complaint "scream[] outrage." *Id*. at 13.

The elements of IIED are:

(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;

(2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;

(3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and,

(4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Zsigray*, 842 S.E.2d at 727 (citing *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419, 421 (1998)). A police investigation, in and of itself, is usually not outrageous. *Sammons v. Sowards*, 2022 U.S. Dist. LEXIS 49719, at *27 ("The proper investigation of a crime, even if mistaken, is not outrageous conduct as a matter of law.") (citing *Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385, 390-92 (1994) (a finding for defendant on a malicious prosecution claim negates a claim for outrageous conduct inasmuch as the showings necessary to support "a malicious prosecution case are less severe than an action for outrageous conduct")). However, in *Sammons*, this Court found no constitutional violation had occurred during the police investigation. *Id*. Therefore, the conduct of a lawful police investigation did not rise to the requisite level of outrageousness. *Id*. Here, on the other hand, Ms. Hall has plausibly alleged constitutional violations and, therefore, has plausibly alleged outrageous conduct exceeding the bounds of what a decent society would accept from a police investigation.

While Mr. Hall was not present at the time of either the November 2021 or April 2022 incidents at the Hall residence, the Complaint alleges a variety of potentially outrageous behavior which could support his claim for IIED. Plaintiffs' IIED count incorporates all preceding allegations of the Complaint, as well as broadly alleging that the IIED claim was grounded in "the conduct of Defendants Pauley and Grimmett." Compl. ¶¶ 92-93. *Inter alia*, the Complaint alleges that the Deputies forced Mr. Hall's wife to testify against him and falsely accused him of child abuse. Compl. ¶¶ 13-17, 31. If proven, a reasonable finder of fact could determine that these incidents

were sufficiently outrageous and reckless as to entitle Mr. Hall to relief under IIED.

Therefore, as to both Mr. and Ms. Hall, Defendants' Motion to Dismiss Plaintiffs' claim of IIED is **DENIED.**

iv.     *Spoliation of Evidence*

Defendant Deputies argue that Plaintiffs fail to plausibly allege their state law spoliation of evidence claim as there is no allegation that Deputy Pauley willfully destroyed the recording of Ms. Hall with the intent to defeat future civil liability. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 19. They assert that it is implausible to assume Deputy Pauley anticipated the current action against him at the time he recorded Ms. Hall's statement in November 2021. *Id.* at 20. In response, Plaintiffs emphasize that it is currently unknown at what point between the November 2021 encounter and Mr. Hall's May 2022 trial Ms. Hall's statement was deleted. Pls.' Resp. to Def. Deputies' Mot. and Mem. of Law in Supp of Mot. to Dismiss at 13. If Deputy Pauley deleted the recording after Ms. Hall filed her complaint with PCC, he was likely on notice of pending civil liability concerning that recording and the circumstances surrounding it. *Id.*

The elements of spoliation of evidence are:

(1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages. Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The spoliator must overcome the rebuttable presumption or else be liable for damages.

*Hannah*, 584 S.E.2d at 572. "A 'pending or potential civil action' exists where the plaintiff has actually filed a claim, or where there is evidence objectively demonstrating the possibility that the

plaintiff was likely to pursue a claim in the future." *Williams v. Werner Enterprises, Inc.*, 770 S.E.2d 532, 539 (2015) (citing *Mace v. Ford Motor Co.*, 653 S.E.2d 660, 665 (2007)). Actual knowledge is required. *Mace*, 653 S.E.2d at 665.

Defendant Deputies argue that Deputy Pauley could not have known that a civil action was impending at the time he allegedly deleted evidence in November 2021. Def. Deputies' Mem. of Law in Supp. of Mot. to Dismiss at 19-20; Def. Deputies' Reply to Pls.' Resp. to Def. Deputies' Mot. to Dismiss at 12-13. But while the Complaint alleges that Deputy Pauley deleted and re-recorded portions of Ms. Hall's testimony in the November encounter, nowhere does Plaintiffs' Complaint allege that the recording was reduced to only the remaining five minutes at that point in time. *See* Compl. If anything, Plaintiffs appear to allege that a substantial part of a two-hour interrogation of Ms. Hall was recorded. *See id*. at ¶¶ 14-15. Considering these alleged facts, Plaintiffs' response is persuasively plausible—that discovery is required to determine if the spoilation occurred before or after Ms. Hall filed her complaint, which could have put Defendants on notice of a potential civil action. Pls.' Resp. to Def. Deputies' Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 13.

Accordingly, Defendants' Motion to Dismiss the claim of spoilation of evidence against Deputy Pauley is **DENIED**.

## C.  Punitive Damages

As a final matter, both Plaintiffs and PCC have agreed that PCC is not subject to punitive damages under relevant state and federal law. Def. PCC's Mem. of Law in Supp. of Mot. to Dismiss at 17; Pls.' Resp. to Def. PCC's Mot. and Mem. of Law in Supp. of Mot. to Dismiss at 20. The Court agrees with the parties' assessment. As discussed in depth above, Plaintiffs have brought

claims against PCC under *Monell* and three state law torts: IIED, abuse of process, and spoilation of evidence. This Opinion has dismissed Plaintiffs' claims under state law, pursuant to the Act. *See also* § 29-12A-7 (stating that political subdivisions are not subject to punitive damages even where they may be held liable under the Act). The Supreme Court has held that municipalities are immune from liability for punitive damages under § 1983. *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *Davis v. Milton Police Dept.*, 2020 WL 2341238 at *8 (S.D.W. Va. May 11, 2020). Therefore, the Court **GRANTS** PCC's Motion to Dismiss Plaintiffs' request for punitive damages as to their *Monell* claim.


## IV. CONCLUSION

In summary, the Court **GRANTS** Defendant PCC's Motion to Dismiss the state law claims brought against it—Count IV: Abuse of Process, Count V: IIED, and Count VI: Spoilation of Evidence. The Court further **GRANTS** Defendants' Motions to Dismiss both Plaintiffs' Count I: § 1983 claims concerning alleged excessive force, and to dismiss Mr. Hall as a plaintiff from the § 1983 claims brought under the First Amendment and the Fourth Amendment claims as to the alleged unreasonable seizures. Defendant PCC's Motion to Dismiss the Count III: Supervisory Liability claim as brought against it is also **GRANTED**. Finally, Defendant PCC's Motion to Dismiss Plaintiffs' request for punitive damages is **GRANTED**.

However, Defendants' requests that the Court dismiss Ms. Hall's other § 1983 claims, Mr. Hall's Fourth Amendment unreasonable search claim, and both Plaintiffs' Count II: *Monell,* Count IV: Abuse of Process, V: IIED, and Count VI: Spoilation of Evidence claims as brought against the Deputies are **DENIED**.

Accordingly, Count III is **DISMISSED**. Counts I, II, IV, V, and VI survive the instant Motions, in part or in whole. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        October 26, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE