IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ANGELA HALL and
ERIK HALL,

       Plaintiffs,

v.                                  Case No.: 3:22-cv-00277

PUTNAM COUNTY COMMISSION,
et al.,

       Defendants.

MEMORANDUM OPINION AND ORDER

Pending is the Motion to Quash Subpoena to Testify at a Deposition on July 7, 2023, Motion for Hearing on the Motion to Quash, and Motion for Stay of Deposition Until a Hearing is Held on the Motion to Quash. (ECF No. 70). Plaintiffs have filed a Response to the Motion. (ECF No. 74). On Thursday, June 29, 2023, the undersigned held a telephonic hearing. Present were Travis A. Griffith, counsel for Plaintiffs; Benjamin Brice Vanston and Wendy E. Greve, counsel for Defendants; and Barbara Baxter, Attorney at Law, non-party movant.

In this civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiffs claim, in relevant part, that Defendants caused a frivolous abuse and neglect proceeding to be instituted against Plaintiffs maliciously and for the purposes of retaliation, intimidation, and harassment. Non-party, Ms. Baxter, is the guardian ad litem appointed by the Circuit Court of Putnam County, West Virginia to represent the interests of Plaintiffs' children in the abuse and neglect proceeding. Plaintiffs have served Ms. Baxter with two subpoenas

in the instant action: (1) a subpoena to produce documents, information, or objects or to permit inspection of premises; and (2) a subpoena to testify. The subpoena to produce documents seeks Ms. Baxter's billing records in the abuse and neglect case; that subpoena currently is not at issue, because Ms. Baxter has not yet prepared billing records. However, Ms. Baxter moves to quash the subpoena to testify and requests a hearing on the motion to quash and a stay of the subpoena until the motion can be heard. (ECF No. 70). For the reasons that follow, the Court **GRANTS** the Motion for a hearing; **DENIES** the Motion to stay, as moot; **DENIES** the Motion to quash; but **GRANTS** a modification of the subpoena to limit the information required to be disclosed by Ms. Baxter at the deposition as indicated below.

## I.      Relevant Law

Ms. Baxter raises three objections to the subpoena to testify, which presumably has been served on her to discover information related to the abuse and neglect proceeding. (ECF No. 70). First, Ms. Baxter claims that the subpoena is intended to harass her. She argues that allowing Plaintiffs  to depose her about the abuse and neglect proceeding will invite other parents in similar positions to do the same, subjecting guardians ad litem to intimidation and harassment. Second, she believes that Plaintiffs are attempting to lure her into violating confidentiality as she attempts to respond to questions. Finally, Ms. Baxter asserts that the state child abuse and neglect proceeding has nothing to do with the federal court action; therefore, no relevant information is likely to be obtained from her deposition.

In response, Plaintiffs deny that they are attempting to harass Ms. Baxter or trick her into revealing confidential information. (ECF No. 74). They point out that as participants in the state proceeding, they have access to much of the information anyway.

They further argue that records from this type of proceeding have not been protected from discovery in subsequent civil rights litigation related to the abuse and neglect proceeding. Finally, Plaintiffs contend that the information they seek is relevant, because it bears on whether Defendants initiated the state court proceeding maliciously and to retaliate against Plaintiffs.

### A. *Rule 45*

Federal Rule of Civil Procedure 45(d) sets forth the protections available to a person subject to a subpoena. In particular, Rule 45(d)(3) outlines when a court *must* quash or modify a subpoena, when it *may* do so, and when the court may direct compliance under specified conditions. According to the rule, a court is "required" to quash or modify a subpoena that: "(i) fails to allow a reasonable time to comply"; "(ii) requires a person to comply beyond the geographic limits specified in Rule 45(c)"; "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies"; or "(iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The burden of persuasion in a motion to quash a subpoena … is borne by the movant." *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003); *see also HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) ("[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.").

In the context of discovery, "Rule 45 adopts the standards codified in Rule 26." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). As such, "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *HDSherer LLC*, 292 F.R.D. at 308; *Singletary v. Sterling Transport Co.*, 289 F.R.D. 237, 240-41 (E.D. Va. 2012). In other words, "[a]lthough Rule 45(c) sets forth

3

additional grounds on which a subpoena against a third party may be quashed, ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26." *Cook v. Howard*, 484 Fed. Appx. 805, 812 (4th Cir. 2012); *see also Barber v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:14-cv-27349, 2015 WL 6126841, at *5 (S.D.W. Va. Oct. 16, 2015) (citing *Cook*, 484 Fed. Appx. at 812).

Looking to Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). Thus, "[r]elevance is ... the foundation for any request for production, regardless of the individual to whom a request is made." *Cook*, 484 Fed. Appx. at 812. Indeed, the Fourth Circuit has recognized that a subpoena seeking irrelevant information may subject its recipient to an "undue burden" under Rule 45(d)(3)(A)(iv). *Id.* at 812 n.7; *see also HDSherer LLC*, 292 F.R.D. at 308 (recognizing that an overbroad subpoena or subpoena seeking irrelevant information imposes an undue burden on recipient). While Rule 26(b)(1) does not precisely define relevancy, information is relevant if it logically relates to a party's claim or defense. The determination as to whether a subpoena imposes an undue burden is committed to the discretion of the trial court. *Hirschfeld*, 219 F.R.D. at 74.

As an alternative to quashing a subpoena, a court may issue a protective order to protect the subpoena recipient from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such a protective order may forbid the discovery sought, prescribe an alternative discovery method for obtaining the information sought, or prohibit inquiry into certain matters. *Id.* Under Rules 26(b)(2)(C) and 26(c), "the court has broad authority to limit discovery and prescribe alternative discovery mechanisms," *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009), and

to determine "when a protective order is appropriate and what degree of protection is required." *Furlow v. United States*, 55 F.Supp.2d 360, 366 (D. Md. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

Notwithstanding the court's broad authority, protective orders "should be sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987)). Moreover, a court's customary reluctance to constrain discovery is heightened in the case of a motion seeking to prevent the taking of a deposition. *Minter*, 258 F.R.D. at 125 (citing *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001)) ("By requesting the Court to prohibit plaintiff from deposing a witness, defendant ... assumes a heavy burden because protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances."). The reason for this is simple. Usually, the subject matter of a deposition is not well-defined in advance; thus, the need for prospective relief is more difficult to establish than in other methods of discovery. In addition, "a motion can be made if any need for protection emerges during the course of the examination;" therefore, a ruling prior to commencement of the deposition is not necessary to achieve a fair resolution. 8 Wright & Miller, *Federal Practice and Procedure*, § 2037 (3d Ed.). As a result, the burden to show good cause for an order prohibiting the taking of a deposition is especially heavy. *Medlin*, 113 F.R.D. at 653; *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.").

### B. Attorney-Client Privilege and Work Product

As a general rule, the attorney-client privilege protects all confidential

communications between a lawyer and "his client, agents, or superiors, or to other lawyers in the case of joint representation." *United States v. Under Seal,* 748 F. 2d 871, 874 (4th Cir. 1984). Confidential communications are those "not intended to be disclosed to third persons other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means." *Id.* (citation omitted). "The attorney-client privilege as traditionally recognized at common law and as now incorporated in the Federal Rules of Evidence, controls in all federal judicial proceedings." *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir. 1984).

The work-product doctrine is designed to protect documents and things prepared by or for a party in anticipation of, or secondary to, litigation. *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947). The protection provided by the doctrine extends beyond the litigation for which the materials are created, *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015) (citing *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 483 (4th Cir. 1973)), and is designed to encourage effective legal representation by removing counsels' fear that their information and thoughts will be invaded by an adversary if counsel records them, and the records are later made available for review. *Duplan Corp.* 487 F.2d at 483–484.

Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine of work product protection, stating as follows:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the

> materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

As plainly stated, "[t]o qualify as work-product shielded from discovery, the evidence must be: (1) documents or tangible things otherwise discoverable; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party to the lawsuit or by or for the party's representative." *United Prop. & Cas. Ins. v. Couture*, No. 2:19-CV-01856-DCN, 2020 WL 2319086, at *4 (D.S.C. May 11, 2020).

Work product is generally divided into two categories: "fact work product" and "opinion work product." *Nutramax Laboratories, Inc. v. Twin Laboratories Inc.*, 183 F.R.D. 458, 462 (D. Md. 1998). Fact work product "consists of documents prepared by an attorney that do not contain the attorney's mental impressions." *In re Grand Jury Proceedings,* 401 F.3d 247, 250 (4th Cir. 2005). Opinion work product includes the "mental impressions, opinions, and legal theories" of counsel. *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1223 (4th Cir. 1976). Fact work product is discoverable by an adverse party if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Opinion work product, on the other hand, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994). The work product doctrine protects not only those materials prepared by a party and its agents, including its attorney, but also those materials prepared by "agents for the attorney." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). "The same 'principle

7

applies to intangible work product: an attorney's analysis made in anticipation of litigation which has not been memorialized. Such work-product is immune from discovery just as if it had been reduced to writing.'" *Wellin v. Wellin*, 211 F. Supp. 3d 793, 808 (D.S.C. 2016), *order clarified,* No. 2:13-CV-1831-DCN, 2017 WL 3620061 (D.S.C. Aug. 23, 2017) (quoting *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 2002 WL 31296430, at \*5 (S.D.N.Y. Oct. 11, 2002)).

## II.    Analysis

Plaintiffs seek to take the deposition of the guardian ad litem in a child abuse and neglect proceeding implicating Plaintiffs. Although this is not the classic case of a party attempting to depose the adverse attorney in ongoing litigation about *the ongoing litigation itself*—which is permitted only in very limited circumstances, *see, e.g., Allen v. Brown Advisory, LLC*, No. CV 3:20-MC-00008, 2020 WL 5603760, at \*2 (W.D. Va. Sept. 17, 2020) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986))—it still raises concerns because Ms. Baxter is an attorney representing a party in pending litigation with interests that are arguably adverse to Plaintiffs.[1] The matter is further complicated by the unique role assigned to the guardian ad litem in West Virginia child abuse and neglect cases.

West Virginia Code § 49-4-601(c) provides that once a petition for child abuse or neglect is filed in the circuit court in the county in which the child resides, the court "shall appoint counsel for the child." This counsel is intended to represent the child's interests "at all stages of the proceedings." W. Va. Code § 49-4-601(f)(1). The same attorney may not represent both the child and any other party, except the same attorney may represent

---

[1] According to Ms. Baxter, the Circuit Court of Putnam County has concluded the adjudicatory hearing in the abuse and neglect proceeding, but a final disposition has not been made.

8

more than one child from the same family who is involved in the proceeding. W. Va. Code § 49-4-601(f)(5). W. Va. Code § 604(b) clarifies that the attorney appointed for the child is the guardian ad litem, and this attorney is required to adhere to the Rules of Professional Conduct in her representation of the child. The Guidelines for Children's Guardians Ad Litem in Child Abuse and Neglect Cases promulgated by the Supreme Court of Appeals of West Virginia describe the guardian ad litem ("GAL") as having a dual role— both as an attorney and as someone to act in the best interests of the child. *See* W. Va. R. CHILD ABUSE AND NEGLECT P. App. A at § A.1 As an attorney, the GAL "owes a duty of confidentiality to the child" that, while not absolute, is nearly so. *Id.* at § B.2. Furthermore, at least some portion of the GAL's work product is recognized as protected, albeit not all of it. *See* W. Va. R. CHILD ABUSE AND NEGLECT P. App. B. ("A GAL must submit a written report to the court and provide a copy to all parties at least five (5) days prior to the disposition hearing. It is the duty of the GAL to determine if the information contained in the report should be sealed or redacted."); *also* W. Va. R. CHILD ABUSE AND NEGLECT P. App. A at § D.8. (stating the GAL must: "[s]ubmit a written report to the court and provide a copy to all parties at least five (5) days prior to the disposition hearing ... [w]hen necessary, petition the court to seal or redact information contained in the report ... [s]ubmit an updated report if necessary to notify the court of any changes in the child's circumstances. Such report is protected by the attorney-client privilege and the attorney work product privilege. GALs are precluded from testifying as to any aspect of the report.")

Notwithstanding her role as an attorney, the GAL has other duties not typically held by attorneys. For example, when appropriate, the GAL may conduct in-home visits to observe the living environment of the child's parents and their interactions with the

child. W. Va. R. CHILD ABUSE AND NEGLECT P. App. A at § C.6. Also, when appropriate, the GAL monitors the progress of the parents in satisfying the conditions of any improvement period; interviews all witnesses, caseworkers, health care providers, school personnel, relatives, and siblings; assists in determining whether the child should testify in the proceeding and receive medical and psychological examinations; makes recommendations to the court; testifies as needed; prepares written reports; and acts as a liaison between the court, the agencies, and the child. *Id.* at § D. In sum, Ms. Baxter acts as the child's attorney, but also as an investigator, social worker, quasi-judicial officer, prosecutor, and expert witness rolled into one. The scope of the GAL's duties are so broad that guardians ad litem have been granted quasi-judicial immunity for the tasks they perform as part of child abuse and neglect proceedings. *Fleming v. Asbill,* 42 F.3d 886, 889 (4th Cir. 1994).

There is no doubt that Ms. Baxter had interactions with one or more of the defendants as part of the abuse and neglect proceeding. Plaintiffs have asserted a claim in this civil rights case related to Defendants' motives in instigating the abuse and neglect proceeding. Consequently, Ms. Baxter potentially has information that is relevant to Plaintiffs' claims against Defendants. Some of that information may be privileged, and some of it may not be privileged. Moreover, some of the information that originally was privileged may no longer be privileged because it was disclosed to Plaintiffs or others as part of the information they were entitled to receive before, during, and after the adjudicatory hearing. Finally, some of the intangible work product in Ms. Baxter's possession may be subject to disclosure if the privilege otherwise was waived. Clearly, the Court is not in a position to rule in advance on whether Ms. Baxter has relevant information that is not protected from discovery, as there are no documents at issue for

the Court to review, and the Court cannot possibly know what questions will be asked at the deposition.

In the course of the telephonic hearing, it became clear that Ms. Baxter objected to testifying largely because she did not understand how the state abuse and neglect proceeding was relevant to this federal court case. Once the civil rights claims were explained to Ms. Baxter, she did not object to providing testimony as long as the scope of the testimony was limited and did not invade privileged communications with her clients. The parties agreed that Ms. Baxter's deposition would be limited to the following general topics: (1) information provided by Defendants to Ms. Baxter in the abuse and neglect proceeding; (2) information reviewed by Ms. Baxter that informed her initial recommendation to the Circuit Court of Putnam County that the children should be removed from Plaintiffs' custody; and (3) Ms. Baxter's relationships with Defendants, as well as with the prosecutor and lawyers in the abuse and neglect proceeding. The parties further agreed that Ms. Baxter shall not be required to disclose any privileged attorney-client communications with Plaintiffs' children.

Although Ms. Baxter will have to testify, she is free to object to questions based upon the attorney-client privilege and the attorney work product privilege and should make those objections to individual questions during the deposition. Ms. Baxter shall only be required to disclose *fact* work product that falls within the topics outlined above, to the extent that such fact work product has not been sealed by the Circuit Court of Putnam County and she does not otherwise object. On this point, the cases relied upon by Plaintiffs for the proposition that there is no federal evidentiary privilege that attaches to the records of state abuse and neglect proceedings, (ECF No. 74 at 3), are not relevant to the issue at hand. The privileges raised by Ms. Baxter are the attorney-client privilege and the

privilege that extends to attorney work product, both of which are recognized in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and at common law as providing the holder with a privilege from disclosing information in discovery and at a judicial proceeding. Ms. Baxter does not waive those privileges simply by appearing and testifying pursuant to Plaintiffs' subpoena. Nor do these privileges disappear simply because Plaintiffs have filed a civil rights action challenging Defendants' motives in triggering the abuse and neglect proceeding.

Therefore, the Court **ORDERS** Ms. Baxter to appear for her deposition at Pullin Fowler Flanagan Brown & Poe PLLC 901 Quarrier Street Charleston, West Virginia on **Wednesday, August 9, 2023** at **10:00 a.m.**, as agreed to by the parties and Ms. Baxter, and to respond to questioning consistent with the parameters of this Memorandum Opinion and Order. The parties and Ms. Baxter may change the arrangements of the deposition without involving the Court, **so long as** they all agree to do so.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to counsel of record and Barbara L. Baxter, Attorney at Law.

**ENTERED:** July 5, 2023

Cheryl A. Eifert
United States Magistrate Judge

12