IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**ANGELA HALL and
ERIK HALL,**

      **Plaintiffs,**

v.                                      Case No.: 3:22-cv-00277

**PUTNAM COUNTY COMMISSION,
et al.,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Plaintiff's Motion for Civil Contempt Against Barbara Baxter, Esq. (ECF Nos. 93, 94). The Motion was referred to the undersigned United States Magistrate Judge to consider the relevant documents and evidence and make a recommendation for the Motion's disposition to the presiding District Judge. (ECF No. 95). In lieu of briefing, the undersigned ordered the parties and the non-party witness, Barbara Baxter, Esq., to appear on September 7, 2023 for a hearing on the Motion. (ECF No. 99).

On September 7, 2023, Plaintiffs appeared, by counsel, Travis A. Griffith, Esq.; Defendants appeared, by counsel, Benjamin B. Vanston, Esq.; and Barbara Baxter, Esq. appeared, in person, to respond to the Motion. (ECF No. 100). After hearing from the parties and Ms. Baxter, and carefully reviewing the transcript of Ms. Baxter's deposition, as well as the relevant Order of the Court and the governing law, the undersigned **FINDS** that Plaintiffs have not established by clear and convincing

1

evidence that Ms. Baxter should be held in civil contempt pursuant to Fed. R. Civ. P. 45(g), and further **FINDS** that Ms. Baxter substantially complied with the relevant Order. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Motion for Civil Contempt. (ECF Nos. 93, 94).

I.  **Relevant Background Information**

In this civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiffs claim, in relevant part, that Defendants caused a frivolous abuse and neglect proceeding to be instituted against Plaintiffs maliciously and for the purposes of retaliation, intimidation, and harassment. Non-party, Ms. Baxter, is the guardian ad litem appointed by the Circuit Court of Putnam County, West Virginia to represent the interests of Plaintiffs' children in the abuse and neglect proceeding. In the course of discovery herein, Plaintiffs served Ms. Baxter with two subpoenas: (1) a subpoena to produce documents, information, or objects or to permit inspection of premises and (2) a subpoena to testify. The subpoena to produce documents sought Ms. Baxter's billing records in the abuse and neglect case. (ECF No. 71). As she had not yet prepared billing records, that subpoena yielded no information. (*Id.*). Although the subpoena to testify did not specify topics of inquiry, Ms. Baxter concluded that it must concern the abuse and neglect proceeding. Consequently, she moved to quash the subpoena to testify, and requested a hearing on the motion to quash. (ECF No. 70).

Ms. Baxter raised three specific objections to the subpoena to testify. (*Id.*). First, she claimed that the subpoena was intended to harass her. She argued that allowing Plaintiffs to depose her about the abuse and neglect proceeding would invite other parents in similar positions to do the same, subjecting guardians ad litem to intimidation and harassment. Second, she believed that Plaintiffs were attempting to

2

lure her into violating confidentiality as she attempted to respond to questions. Finally, Ms. Baxter asserted that the state child abuse and neglect proceeding had nothing to do with Plaintiffs' civil rights action in federal court; therefore, no relevant information was likely to be obtained from her deposition. (*Id.*).

In response, Plaintiffs denied that they are attempting to harass Ms. Baxter or trick her into revealing confidential information. (ECF No. 74). They pointed out that as participants in the state proceeding, they had access to much of the information anyway. They further argued that records from this type of proceeding were not protected from discovery in subsequent civil rights litigation related to the abuse and neglect proceeding. Finally, Plaintiffs contended that the information they sought was relevant, because it bore on whether Defendants initiated the state court proceeding maliciously and to retaliate against Plaintiffs.

The undersigned held a telephonic hearing on Ms. Baxter's motion to quash on June 29, 2023. (ECF No. 77). In the course of the telephonic hearing, it became clear that Ms. Baxter objected to testifying largely because she did not understand how the state abuse and neglect proceeding was relevant to the federal court case. Once the civil rights claims were explained to Ms. Baxter, she did not object to providing testimony as long as the scope of the testimony was limited and did not invade privileged communications with her clients. The parties agreed that Ms. Baxter's deposition would be limited to the following general topics: (1) information provided by Defendants to Ms. Baxter in the abuse and neglect proceeding; (2) information reviewed by Ms. Baxter that informed her initial recommendation to the Circuit Court of Putnam County that the children should be removed from Plaintiffs' custody; and (3) Ms. Baxter's relationships with Defendants, as well as with the prosecutor and

3

lawyers in the abuse and neglect proceeding. The parties further agreed that Ms. Baxter would not be required to disclose any privileged attorney-client communications with Plaintiffs' children. The parties and Ms. Baxter agreed on a date, time, and location for the deposition.

## II. Relevant Court Order

After conclusion of the hearing, the undersigned drafted a Memorandum Opinion and Order to memorialize the agreement reached by Ms. Baxter and the parties (the "Order"). (ECF No. 78). In addition, the Order was intended to highlight that Ms. Baxter was not a typical witness given her role as guardian ad litem in an ongoing abuse and neglect proceeding implicating Plaintiffs. As was explained in the Order, although this was not the classic case of a party attempting to depose the adverse attorney in ongoing litigation about *the ongoing litigation itself*—which is permitted only in very limited circumstances, *see, e.g., Allen v. Brown Advisory, LLC*, No. CV 3:20-MC-00008, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986))—it still raised concerns because Ms. Baxter was an attorney representing a party in pending litigation with interests that were arguably adverse to Plaintiffs.[1] The matter was further complicated by the unique role assigned to the guardian ad litem in West Virginia child abuse and neglect cases.

West Virginia Code § 49-4-601(c) provides that once a petition for child abuse or neglect is filed in the circuit court in the county in which the child resides, the court "shall appoint counsel for the child." This counsel is intended to represent the child's

---

[1] According to Ms. Baxter, the Circuit Court of Putnam County had concluded the adjudicatory hearing in the abuse and neglect proceeding, but a final disposition had not been made at the time of the telephonic motion hearing.

4

interests "at all stages of the proceedings." W. Va. Code § 49-4-601(f)(1). The same attorney may not represent both the child and any other party, except the same attorney may represent more than one child from the same family who is involved in the proceeding. W. Va. Code § 49-4-601(f)(5). W. Va. Code § 604(b) clarifies that the attorney appointed for the child is the guardian ad litem, and this attorney is required to adhere to the Rules of Professional Conduct in her representation of the child. The Guidelines for Children's Guardians Ad Litem in Child Abuse and Neglect Cases promulgated by the Supreme Court of Appeals of West Virginia describe the guardian ad litem ("GAL") as having a dual role—both as an attorney and as someone to act in the best interests of the child. *See* W. Va. R. CHILD ABUSE AND NEGLECT P. App. A at § A.1 As an attorney, the GAL "owes a duty of confidentiality to the child" that, while not absolute, is nearly so. *Id.* at § B.2. Furthermore, at least some portion of the GAL's work product is recognized as protected, albeit not all of it. *See* W. Va. R. CHILD ABUSE AND NEGLECT P. App. B. ("A GAL must submit a written report to the court and provide a copy to all parties at least five (5) days prior to the disposition hearing. It is the duty of the GAL to determine if the information contained in the report should be sealed or redacted."); *also* W. Va. R. CHILD ABUSE AND NEGLECT P. App. A at § D.8. (stating the GAL must: "[s]ubmit a written report to the court and provide a copy to all parties at least five (5) days prior to the disposition hearing … [w]hen necessary, petition the court to seal or redact information contained in the report … [s]ubmit an updated report if necessary to notify the court of any changes in the child's circumstances. Such report is protected by the attorney-client privilege and the attorney work product privilege. GALs are precluded from testifying as to any aspect of the report.")

Notwithstanding her role as an attorney, the GAL has other duties not typically held by attorneys. For example, when appropriate, the GAL may conduct in-home visits to observe the living environment of the child's parents and their interactions with the child. W. Va. R. CHILD ABUSE AND NEGLECT P. App. A at § C.6. Also, when appropriate, the GAL monitors the progress of the parents in satisfying the conditions of any improvement period; interviews all witnesses, caseworkers, health care providers, school personnel, relatives, and siblings; assists in determining whether the child should testify in the proceeding and receive medical and psychological examinations; makes recommendations to the court; testifies as needed; prepares written reports; and acts as a liaison between the court, the agencies, and the child. *Id.* at § D. In sum, Ms. Baxter acts as the child's attorney, but also as an investigator, social worker, quasi-judicial officer, prosecutor, and expert witness rolled into one. The scope of the GAL's duties are so broad that guardians ad litem have been granted quasi-judicial immunity for the tasks they perform as part of child abuse and neglect proceedings. *Fleming v. Asbill,* 42 F.3d 886, 889 (4th Cir. 1994).

The undersigned concluded that there was no doubt that Ms. Baxter had interactions with one or more of the defendants as part of the abuse and neglect proceeding, and Plaintiffs had asserted a claim in this civil rights case related to Defendants' motives in instigating the abuse and neglect proceeding. Consequently, Ms. Baxter potentially had information that was relevant to Plaintiffs' claims against Defendants. Some of that information might have been privileged, and some of it might not have been privileged. Moreover, some of the information that originally was privileged might no longer be privileged because it had been disclosed to Plaintiffs or others as part of the information they were entitled to receive before, during, and after

6

the adjudicatory hearing. Finally, some of the intangible work product in Ms. Baxter's possession might have been subject to disclosure if the privilege otherwise was waived. Clearly, the Court was not in a position to rule in advance on whether Ms. Baxter had relevant information that was not protected from discovery, as there were no documents at issue to review, and the Court could not anticipate the questions that would be asked at the deposition.

Accordingly, the undersigned determined, and expressly stated in the Order, that while Ms. Baxter would have to testify, **she was free to object** to questions based upon the attorney-client privilege and the attorney work product privilege and should make those objections to individual questions during the deposition. Ms. Baxter was only required to disclose *fact work product* that fell within the topics outlined above, to the extent that such fact work product had not been sealed by the Circuit Court of Putnam County, and she did not otherwise object. On this point, the undersigned noted in the Order that the cases relied upon by Plaintiffs for the proposition that there was no federal evidentiary privilege that attached to the records of state abuse and neglect proceedings, (ECF No. 74 at 3), were not relevant to the issue at hand. The privileges raised by Ms. Baxter were the attorney-client privilege and the privilege that extended to attorney work product, both of which were recognized in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and at common law as providing the holder with a privilege from disclosing information in discovery and at a judicial proceeding. Ms. Baxter (and her clients) did not waive those privileges simply by appearing and testifying pursuant to Plaintiffs' subpoena. Nor did these privileges disappear simply because Plaintiffs had filed a civil rights action challenging Defendants' motives in triggering the abuse and neglect proceeding.

### III.   Ms. Baxter's Deposition

Ms. Baxter appeared for her deposition on August 9, 2023. (ECF No. 98). The first topic of inquiry permitted by the Order was "information provided by Defendants to Ms. Baxter in the abuse and neglect proceedings." Plaintiffs' counsel never explicitly asked Ms. Baxter what information was provided to her by Defendants. However, counsel did ask Ms. Baxter various questions about her discussions with Defendants. For instance, Plaintiffs' counsel asked Ms. Baxter on page 30 of the deposition if she spoke with Defendant Heather Grimmett prior to the July 7, 2022 adjudicatory prehearing conference to which Ms. Baxter replied: "I don't recall." (ECF No. 98 at 30). Plaintiffs' counsel asked the same question in regard to Deputy Pauley, Deputy Steve Martin, Deputy Bandon Hudson, and Deputy Donathan Jude. (*Id.* at 30-31). Ms. Baxter answered "No," indicating that she had not spoken to any of those defendants prior to the initial hearing on July 7, 2022. (*Id.*). When asked about speaking with Deputy J. B. Grimmett, Ms. Baxter stated that she did call the Sheriff's Office at some point and someone answered, but she did not know who answered. (*Id.* at 31). Ms. Baxter believed that Heather Grimmett called her back at some point, but she could not recall when. (*Id.*).

Later, Plaintiffs' counsel asked Ms. Baxter: "When did you interview Heather Grimmett for the Halls case?" to which Ms. Baxter replied: "At some point, I did talk to her, yes. But I think it was at the courthouse." (ECF No. 98 at 35). However, Ms. Baxter could not recall if that was at the hearing on July 7, 2022 or not. (*Id.*). Again, Ms. Baxter stated that she may have spoken to Ms. Grimmett on the phone as well as at the courthouse. (*Id.* at 36). Counsel asked how long the discussion with Heather Grimmett lasted, but did not ask what information Ms. Grimmett provided to Ms.

8

Baxter. (*Id.*).

Plaintiffs' counsel asked Ms. Baxter if she interviewed the defendants, going through their names one-by-one, and she initially refused to answer based upon privilege. (ECF No. 98 at 37-39). However, she did state that she heard them all testify and may have asked them questions during their in-court appearances. (*Id.*). Ms. Baxter further testified that she had no occasion to speak to any of the deputies before the petition alleging neglect and abuse was filed. (ECF No. 98 at 39). After a brief break, Ms. Baxter testified as follows:

> **Ms. Baxter**: I have told you that I only spoke, outside the actual hearing process, with Heather Grimmett. And that the only time I spoke with the sheriffs was, other than Heather Grimmett, was when they were testifying, to the best of my knowledge and recollection. And other than that, I'm [not] going to get involved in my investigation and what I've done. I believe it's privileged.
>
> **Plaintiffs' counsel**: Okay. So, you won't tell me that you even spoke to them outside of the hearing? Is that what you're telling me?
>
> **Ms. Baxter**: I'm telling you I didn't.
>
> **Plaintiffs' counsel**: Okay. So now you're telling me that you – oh, let's go back through then. So, did you ever conduct an interview with Deputy Sheriff Heather Grimmett, outside of the hearing? Is that what you're telling me?
>
> **Ms. Baxter**: I'm going to object based on privilege and work product.
>
> **Plaintiff' counsel**: Okay. Well, you just told me you never spoke to any of the deputies outside of the hearing. So now you're going to object?
>
> **Ms. Baxter**: No, I said, and maybe, I don't know – I said that other than Heather Grimmett, the other deputies, I never spoke to outside of their testimony and my questions to them.

(ECF No. 98 at 49). Even after this testimony, Plaintiffs' counsel asked Ms. Baxter if she privately interviewed Deputy Pauley, Martin, Hudson, Jude, or J.B. Grimmett, to which she responded in the negative. (*Id.* at 49 -50). As previously stated, Plaintiffs'

9

counsel never specifically asked what information was provided to Ms. Baxter by any of the defendants.

Topic two involved the information reviewed by Ms. Baxter that informed her initial recommendation to the Circuit Court that the children should be removed from Plaintiffs' custody. Although Ms. Baxter did not testify that the petition itself informed her initial recommendation, she stated that she had read the petition prior to the initial hearing. (ECF No. 98 at 12). Ms. Baxter also testified that prior to the hearing, she called the prosecuting attorney and Child Protective Services. (*Id.* at 30). She could not recall if she spoke with anyone from the Sheriff's Office. (*Id.* at 30-31).

Plaintiffs' counsel had the following exchange with Ms. Baxter:

**Plaintiffs' counsel**: "I'm just trying to figure out why when the State was not requesting the children be removed on July 7, 2022, why you told the judge you wanted those children removed on July 7, 2022."

**Ms. Baxter**: "Okay. And I'm not going to answer that question."

**Plaintiffs' counsel**: "Okay. So, we don't know who you talked to, and you're not going to answer why you demanded those children be removed from the home on July 7, 2022?"

**Ms. Baxter**: "My understanding is the purpose of your lawsuit is not to determine whether or not the guardian ad litem has done a good job or was properly appointed. But the reason for your lawsuit was to determine whether there was bias in filing the abuse and neglect [petition] against your clients."

(ECF No. 98 at 32). She then claimed privilege as an objection to the question. (*Id.* at 32-33). Plaintiffs' counsel asked if the officers were "trying to remove the children from the home," but Ms. Baxter again refused to answer the question. (*Id.* at 33). As indicated above, Ms. Baxter testified that she did not speak with any of the deputies—with the exception perhaps of Heather Grimmett—prior to or outside of the hearings. (*Id.* at 30-31, 49-50). Ms. Baxter was not asked if she received any written information

10

from the defendants or from anyone else, but she was asked what she did to prepare for the July 7, 2022 hearing. (ECF No. 98 at 30). Ms. Baxter testified that she called the prosecutor, CPS, and perhaps the Sheriff's Office, although she was not certain. (*Id.*). She was never explicitly asked what documents she reviewed before making her recommendation.

The third and final topic to be covered at the deposition was Ms. Baxter's relationships with Defendants, as well as the prosecutors and lawyers in the abuse and neglect proceeding. (ECF No. 78 at 11). Ms. Baxter provided the following testimony relevant to this topic:

> **Ms. Baxter**: "I don't know Heather." (ECF No. 98 at 15).

Then later, she testified:

> **Plaintiffs' counsel**: Tell me about any relationship you have with Heather Grimmett.
>
> **Ms. Baxter**: I have no relationship with Heather Grimmett.
>
> **Plaintiffs' counsel**: Have you ever spoken with her?
>
> **Ms. Baxter**: Yes.
>
> **Plaintiffs' counsel**: Have you ever spoke with her on a social matter?
>
> **Ms. Baxter**: No.
>
> **Plaintiffs' counsel**: Okay. The only time you've spoke with her, has it been with regard to the Halls' case?
>
> **Ms. Baxter**: Yes, as far as I know.

(ECF No. 98 at 35).

After being question again regarding interviews and discussions with the other deputies, Ms. Baxter testified:

> Now what I will tell you about the sheriff's office in Putnam County is – I'm not friends with any of them, they're not my social acquaintances. I don't know any of them. And the first time I would have ever seen them was when they were, that I recall, was when they were in the courtroom. (*Id.* at 39).

She added:

> I did not know any of these people before this petition was filed against your client. .... I don't know any of the deputies outside of this matter, the adjudicatory hearing, They're not my friends, and they're not my social acquaintances. I wouldn't even recognize them if I ran into them on the street.

(*Id.* at 40). And finally, she stated:

> I just want to make a statement on the record, too. And my statement is I don't know anyone on the Putnam County Commission. I'm not social friends with any of them. They don't come to my home. And I'm not social friends with Judge Reeder or Paige Hoffman, the prosecuting attorney. I don't know any of those people outside of the courtroom. I've been appointed on a couple of cases as guardian ad litem by Judge Reeder, but it's less than ten, and it may be less than five. So, I mean, I don't do a lot of work in Putnam County, and I just don't know them. And they're not my social friends, and we're not social acquaintances. We just work professionally together. That's all I want to say.

(ECF No. 98 at 47).

### IV.   **Standard of Review**

Federal Rule of Civil Procedure Rule 45(g) states that a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." A party seeking an order of civil contempt under Rule 45(g) must demonstrate, by clear and convincing evidence, each of the following four elements:

> (1) the existence of a valid court order;
> (2) the order was in the moving party's favor;
> (3) a knowing violation of the terms of the order; and
> (4) the moving party suffered harm from the violation.

*Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461–62 (4th Cir. 2020) (quoting

*United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)). "To be clear and convincing, evidence must 'place in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are 'highly probable.'" *Ali*, 874 F.3d at 831 n.2 (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). If the moving party makes a prima facie showing of these elements, the burden shifts to the accused contemnor to show that all reasonable efforts were made, in good faith, to comply with the subpoena or related court order. *Ali*, 874 F.3d at 832 (quoting *United States v. Darwin Const. Co.*, 873 F.2d 750, 754 (4th Cir. 1989)). Recognized defenses to civil contempt include: (1) a good faith attempt to comply with the court's order, even when ineffective; (2) substantial compliance with the order; or (3) the inability to comply. *Consolidated Coal Co. v. United Mine Workers of Am.*, 683 F.2d 827, 832 (4th Cir. 1982).

A court may not exercise its contempt power if there is "fair ground of doubt as to the wrongfulness of" the conduct in question. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801, (2019) (citation and emphasis omitted); *see Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (holding that a finding of contempt is "reserved for those who 'fully understand' the meaning of a court order and yet 'choose to ignore its mandate.'") (quoting *Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). "Accordingly, holding the party in contempt is appropriate only when the party can 'discern from the language of a court's order the actions necessary to comply with the court's directive.'" *Gomez v. Easlan Mgmt.*, No. 6:20-CV-2156-TMC-JDA, 2021 WL 5854413, at *4 (D.S.C. Sept. 30, 2021) (quoting *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 268 (4th Cir. 2019)). When a court decides a motion under Rule 45(g), which is based on an interpretation of that court's own order, a subsequent review of the decision should be "highly deferential" because

"courts are in the best position to interpret their own orders." *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004).

Even when an accused contemnor fails to justify noncompliance with a subpoena or court order, the imposition of contempt remains discretionary with the court. "Contempt is a weighty penalty and should not be casually imposed." *In re Wilson*, 199 F.3d 1329, at *2 (4th Cir. 1999). Civil contempt sanctions are remedial in nature. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 822 (4th Cir. 2004); *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) (holding that the remedies and sanctions for civil contempt "must be remedial and compensatory and, unlike criminal contempt, nonpunitive."). They are not intended to validate the court's authority but rather to "coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 537 (D. Md. 2010).

**V.    Analysis**

Considering the four elements to be proven by Plaintiffs, the undersigned **FINDS** that Plaintiffs have shown by clear and convincing evidence that a court order exists that was, at least, partially in Plaintiffs' favor. Ms. Baxter was ordered to appear for her deposition pursuant to the subpoena; therefore, a court order unquestionably was in existence. The Order was only partially favorable to Plaintiffs, however, because it significantly limited the topics of the deposition, and it allowed Ms. Baxter to object to questions that invaded the attorney-client privilege or the privilege for attorney work product. The Order made clear that the only work product that Ms. Baxter *might* be required to disclose was fact work product associated with information provided to her by the defendants; particularly, information that informed her decision to recommend

14

at the initial abuse and neglect hearing that the children be removed from Plaintiffs' home. Nonetheless, Plaintiffs do establish by clear and convincing evidence that the order was favorable to the extent that it allowed them to proceed with the deposition.[2]

As to the last two elements, the undersigned **FINDS** that Plaintiffs have not established by clear and convincing evidence that Ms. Baxter knowingly violated the terms of the Order, or that they suffered harm by her alleged malfeasance at the deposition. To begin, Plaintiffs complain that Ms. Baxter was "non-responsive" to questions regarding the multi-disciplinary team assembled in Plaintiffs' abuse and neglect proceeding. (ECF No. 97 at 2). The deposition transcript reflects that Plaintiffs' counsel began to question Ms. Baxter about West Virginia's use of multi-disciplinary teams in abuse and neglect cases. (ECF No. 98 at 15). After receiving an explanation, counsel asked about the team assembled in Plaintiffs' case; apparently, to make the point that no such team was ever assembled. (ECF No. 98 at 17). Counsel then handed Ms. Baxter a pamphlet given by West Virginia Department of Health and Human Resources ("DHHR") workers to parents who are the subject of complaints for abuse and neglect, and began to question Ms. Baxter about items in the pamphlet as they touched on Plaintiffs' abuse and neglect case. (*Id.* at 18). Ms. Baxter expressed concern about this line of questioning as it was beyond the scope of her testimony as set forth in the Order and because the "federal court doesn't have oversight over state court proceedings in abuse and neglect cases." (*Id.*). Despite Ms. Baxter's voiced concerns, Plaintiffs' counsel continued the line of questioning. The transcript shows that,

---

[2] Quite honestly, had someone alerted the Court to the fact that **no other** depositions had been taken by Plaintiffs up to that point in the litigation, the ruling certainly may have been different. Requiring the other witnesses to testify before the guardian ad litem may have obviated the need for Ms. Baxter's testimony altogether.

15

contrary to Plaintiffs' representation, Ms. Baxter answered the questions for quite some time. (*Id.* at 19-28). She answered until she was asked if she spoke with one of the DHHR workers. Ms. Baxter objected on the ground of work product. (*Id.* at 28-29). Immediately after, Plaintiffs' counsel threatened Ms. Baxter with a motion to find her in contempt of court.

A review of these pages of the transcript leads to the following conclusions. First, Plaintiffs' counsel did not abide by the Order in his line of questioning. The agreed-upon topics were quite limited. The deposition was not intended to be an opportunity for Plaintiffs' counsel to freely question Ms. Baxter on West Virginia's abuse and neglect adjudicatory and administrative processes—she was not an expert witnesses—or about the adequacy of the state proceeding in Plaintiffs' case, or the quality of Ms. Baxter's services as guardian ad litem. Second, when Ms. Baxter raised concerns that the inquiry exceeded the authorized scope of her deposition, as outlined in the Order, Plaintiff's counsel ignored the concerns and continued to press forward, finally threatening Ms. Baxter with a possible contempt motion if she refused to answer questions that were plainly outside the agreed-upon and approved deposition topics. And finally, as the transcript conveys, the tenor of the inquiry had become unnecessarily adversarial and contentious.

In the next segment of the deposition transcript, Ms. Baxter is asked about her contacts with the defendants before the initial hearing on July 7, 2022, which is the hearing at which she recommended removal of the children. (ECF No. 98 at 29-31). Ms. Baxter answered all of the questions, indicating that the only defendant she may have spoken with prior to that hearing was Heather Grimmett. (*Id.*). She was asked why she told the judge on July 7, 2022 that she wanted the children removed from the

home when the state was not requesting that the children be removed, and she refused to answer on the basis of privilege. (*Id.* at 32-33). Ms. Baxter's answer was perfectly compliant with the Court's Order. She was expressly authorized to assert privilege, and this question asked for opinion work product, which "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994).

Ms. Baxter also refused, on the basis of privilege, to answer the question: "Were the officers trying to remove the children from the home?" As discussed at the hearing, this is the one question that Ms. Baxter failed to answer at the deposition that she should have answered in view of her agreement, as memorialized in the Order. As indicated in the Order, Ms. Baxter agreed that she would answer questions related to information provided by the defendants, as well as information that informed her decision to request removal, even though some fact work product might be disclosed. At the contempt hearing, Ms. Baxter was willing to provide an answer to this question, and placed on the record that none of the officers said anything to her to encourage the removal of the children.

In summary, there were portions of the deposition where Ms. Baxter refused to answer questions regarding her contacts with the defendants; however, the questions were repetitive and had been previously answered. Her refusal to provide duplicate answers did not constitute a non-response to the topic. Moreover, Ms. Baxter ultimately answered those questions again in full. (ECF No. 98 at 35-41, 47-50). She answered all of the questions regarding her relationships with Defendants, the prosecutor, and Judge Reeder, as well. (*Id.*). Counsel never specifically asked Ms. Baxter what information was given to her by the defendants. She testified that prior to

17

the July 7, 2022 hearing, she reviewed the petition and she called the prosecutor, CPS, and maybe the Sheriff's Office. She also learned more about the case during the initial hearing. Ms. Baxter's testimony, taken as a whole, confirms that she attempted to cooperate and generally responded to all of the questions pertinent to the three topics outlined in the Order. Even if Ms. Baxter failed to answer a question she should have answered, or was hesitant to answer because of privilege issues, the undersigned **FINDS** that she substantially complied with the Order. Furthermore, Plaintiffs' counsel contributed to the difficulties he experienced in deposing Ms. Baxter by asking her questions beyond the scope of the agreed-upon topics, implicitly impugning the proceeding and her participation in the process, and being unnecessarily confrontational.

Plaintiffs' likewise have failed to demonstrate by clear and convincing evidence that they suffered harm as a result of Ms. Baxter's alleged violation of the Order. Plaintiffs claim in their motion that they were unable "to obtain the information required from the only source able to provide the information." (ECF No. 97 at 8). Yet, they never articulate the nature of this allegedly unique information known only to Ms. Baxter, and after reviewing the deposition transcript, it is difficult to imagine what other information Ms. Baxter would have that is (1) unique, (2) not privileged, and (3) not already in Plaintiffs' possession. Plaintiffs acknowledged during the telephonic hearing on the motion to quash that Ms. Baxter's deposition might yield no useful information. They realized the scope of the deposition was narrow. Not only did Ms. Baxter provide information in response to the questions posed to her, but Plaintiffs' counsel indicated at the contempt hearing that, since deposing Ms. Baxter, he has completed the depositions of the DHHR workers assigned to the abuse and neglect case

and has "more than sufficient impeachment information" to use against the defendants. Furthermore, Plaintiffs, as the biological parents, participated in the abuse and neglect proceeding and have access to much of the same information as Ms. Baxter. As such, no gaping evidentiary hole is apparent.

As there is no reason to "coerce" Ms. Baxter into compliance with the Order and no evidence of any losses sustained, Plaintiffs simply cannot establish all four elements needed to justify an order of civil contempt.

## VI. Proposal and Recommendation

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that the Motion for Civil Contempt, (ECF Nos. 93, 94), be **DENIED**.

The parties and non-party witness are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties and non-party witness shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of

*de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to counsel of record and to send a copy to non-party witness, Barbara Baxter by mail.

**FILED**: October 3, 2023

Cheryl A. Eifert
United States Magistrate Judge